ATTORNEYS FOR APPELLANTS
Karl L. Mulvaney
Nana Quay-Smith
Candace L. Sage
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
P. Gregory Cross
Muncie, Indiana

Michael J. Alexander
Muncie, Indiana

Donald K. McClellan
Muncie, Indiana

In the

# Indiana Supreme Court

No. 18S04-0602-CV-66

OUTBACK STEAKHOUSE OF FLORIDA,
INC., TONCREDI, INC., AND JOHN BROZ,
D/B/A OUTBACK STEAKHOUSE OF
MUNCIE,

*Appellants (Defendants below),*

v.

DAVID D. MARKLEY AND
LISA K. MARKLEY,

*Appellees (Plaintiffs below).*

Appeal from the Delaware Circuit Court, No. 18C01-9907-CP-284
The Honorable Joel D. Roberts, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 18A04-0401-CV-13

**November 8, 2006**

**Boehm, Justice.**

The plaintiffs' response to the defendants' discovery request failed to identify a critical witness whose identity was known to plaintiffs' counsel. Under the circumstances of this case

we conclude that this omission, in concert with other acts and omissions attributable to plaintiffs' counsel, constituted misconduct requiring a new trial.

## Facts and Procedural History

On the evening of July 21, 1997, William Whitaker attended the "grand opening" of Outback Steakhouse in Muncie. There was conflicting testimony as to Whitaker's level of intoxication when he left Outback between 9:00 and 9:30 pm. After leaving Outback, Whitaker went to Van's, a bar in Muncie, where he was served one or more drinks. Testimony conflicted as to whether the drinks at Van's contained alcohol.[1] At approximately 11:00 pm, David and Lisa Markley were severely injured when the motorcycle they were riding was struck by Whitaker's car.

The Markleys retained attorneys Michael J. Alexander and Donald McClellan, who shared an office in Muncie. Patrice Roysdon had been a waitress at the grand opening but left Outback's employ soon thereafter. One or two months after the opening, Roysdon went to Alexander's office at Alexander's request and told Alexander and his investigator that Whitaker was visibly intoxicated when she served him on the evening of the collision.[2]

In July 1999 the Markleys sued Outback Steakhouse of Florida, Inc. and John Broz, d/b/a Outback Steakhouse of Muncie (collectively "Outback")[3] alleging a common law claim that Outback had negligently served alcohol to an intoxicated person and statutory violations that Outback had knowingly served alcohol to a habitual drunkard in violation of Indiana Code section 7.1-5-10-14 (2004) and had knowingly served alcohol to a visibly intoxicated person in violation of Indiana Code section 7.1-5-10-15.5 (2004).

---

[1] The bartender and waitress at Van's testified that they perceived that Whitaker had had too much to drink when he arrived at Van's and served him only Diet Coke. Whitaker testified that at Van's he drank one or two glasses of Crown Royale and Coke and was confident he knew the difference between that cocktail and a soft drink. In Part II we explain why we conclude the jury rejected Whitaker's testimony on this point.

[2] The record does not make clear whether Roysdon was still in Outback's employ at the time of this visit.

[3] The relationship between these defendants is not clear from the record. The complaint alleges that the defendants were "the owners and operators" of the restaurant in question. No issue is raised on appeal as to the proper parties or the responsibility of these defendants for the actions of the restaurant employees at the grand opening.

In 1999 Outback served interrogatories on the Markleys. Interrogatory 12 read:

> State specifically each and every fact upon which you rely to support your allega-
> tion under I.C. § 7.1-5-10-15.5 that these Defendants, and each of them, provided
> alcoholic beverages to William J. Whitaker with actual knowledge that he was
> visibly intoxicated, and the names and addresses of those persons possessing
> knowledge of such facts.

The Markleys' response identified several individuals who attended the grand opening but did not mention Roysdon. It did not allege that Whitaker displayed any symptoms of intoxication or allege any other facts specific to Whitaker. Rather, it described lack of control over the amount of alcohol consumed by all attendees and made several other factual claims that any server at the opening would presumably have been in a position to confirm or deny. It concluded: "this Inter-rogatory will be supplemented as discovery proceeds."[4]

In 2001, Outback deposed Roysdon. Roysdon testified in the deposition that Whitaker was not visibly intoxicated at Outback. She was not asked whether she had communicated with the plaintiffs' attorneys. Alexander was not present at the deposition, and the Markleys were represented by McClellan alone. McClellan did not challenge Roysdon's testimony that Whitaker seemed "fine."

The trial first started in 2002, but circumstances unrelated to Roysdon produced a mis-trial. A person who had not been identified as a witness testified for the plaintiff, and a juror passed a note to the judge stating that the juror knew the witness and the witness was a "patho-

---

[4] The entire response was:

> The manner in which alcohol was provided to guests at the grand opening was that alco-
> hol was initially going to be given away to all of the guests at the grand opening of the
> Outback, however, it was later determined to charge 10¢ for the specialty drinks and tubs
> of beer on ice were left in the general area for persons to consume and the employees of
> the Outback did not actually concern themselves with collecting the 10¢ for the specialty
> drinks and the personnel of the Outback serving the grand opening were advised to en-
> sure that none of the guests had an empty glass, provide alcoholic beverages as requested
> whether the person was in the waitress' or servers' section or not. Persons that would
> have information concerning this again are, William J. Whitaker, Scott and Kimberly
> Forgey, Attorneys at Law, 220 East Main Street, Muncie, Indiana, Cheryl Crowder, 220
> East Main Street, Muncie Indiana, Jeff Ferris, 413 West 11th Street, Alexandria, Indiana,
> Richard Dailey, Eaton, Indiana, Sally and Jim Barnes, 2355 West Warwick, Muncie,
> Indiana, Bruce Munson, 322 North Walnut Street, Muncie, Indiana, and this Interrogatory
> will be supplemented as discovery proceeds.

3

logical liar." Roysdon had been identified as a witness by Outback but not by the plaintiffs. As a result of the mistrial, she did not testify at the first trial.

A second trial began in June 2003. Shortly before the second trial began, the court granted summary judgment to Outback on the habitual drunkard claim, leaving for trial only the visible intoxication claims. Outback subpoenaed Roysdon to testify as a defense witness. In its opening statement, Outback told the jury Roysdon would testify that Whitaker was not visibly intoxicated and that no witness would be produced who would testify to the contrary. On the Friday of the first week of the trial, still in the presentation of the Markleys' case-in-chief, Roysdon called Alexander's office and arranged an appointment for that Sunday. On Sunday, Roysdon came to Alexander's office and told him she had lied in her 2001 deposition and that she planned to testify at trial that Whitaker was visibly intoxicated when she served him. Roysdon had not communicated her change of story to Outback or its attorneys, and Alexander did not inform the trial court or Outback of this meeting or seek to supplement the plaintiffs' answer to Interrogatory 12.

When trial resumed on Monday, Alexander called Roysdon as a witness. Although the plaintiffs had not listed Roysdon as one of their witnesses, Outback did not object to Roysdon's testifying in the plaintiffs' case-in-chief. Roysdon testified that Whitaker was visibly intoxicated at Outback, that she continued to serve him after she realized he was intoxicated, and that she felt guilty and responsible for the collision. On cross-examination Outback impeached her with statements from her 2001 deposition. Roysdon responded that she lied when she gave her 2001 deposition, that she was afraid when she gave her 2001 statements, and that she wanted to tell the truth at trial regardless of the consequences to her. Outback did not ask that Roysdon's testimony be stricken or that a continuance be granted in response to her decision to recant her deposition testimony. The jury returned a verdict valuing the Markleys' damages at $60 million. It allocated 65% of the fault to Outback, 35% to Whitaker, and 0% to Van's. The trial court accordingly entered judgment against Outback in the amount of $39 million.

The trial concluded on June 25, 2003. On July 30 Outback filed a motion to correct errors alleging a number of grounds, one of which was a claim that Roysdon's testimony either at trial or in deposition was perjured, and this alone was a ground for a new trial. Outback also

4

moved on July 30 for a new trial under Trial Rule 60(B) without specifying whether it was proceeding under 60(B)(2) or 60(B)(3). Outback sought and received leave to conduct post-trial discovery under Rule 60(D) to explore the shift in Roysdon's testimony from her 2001 deposition to her appearance at trial. The plaintiffs responded, characterizing Outback's motion as seeking a new trial under Trial Rule 60(B)(3) for "fraud, misrepresentation, or misconduct." Next, on August 14, after the matters described in Part IV of this opinion came to light through a July 31, 2003 newspaper article, Outback filed a second motion for a new trial based on newly discovered evidence discussed in Part III, which is unrelated to Roysdon's testimony. On September 2, 2003, Outback took a post-trial deposition of Roysdon in which she for the first time revealed her 1997 visit to Alexander's office. Outback filed on October 6, 2003 a "supplementation" to its earlier motions based on Roysdon's disclosure of her 1997 visit with Alexander.

The trial court denied all post-trial relief. Outback appealed on several grounds seeking a new trial and an order compelling the Markleys and/or Alexander and McClellan to pay Outback's trial and post-trial attorney fees. The Court of Appeals affirmed. Outback Steakhouse v. Markley, 831 N.E.2d 228, 241 (Ind. Ct. App. 2005). We granted transfer. Outback Steakhouse v. Markley, No. 18S04-0602-CV-66, 2006 Ind. LEXIS 144 (Ind. Feb. 21, 2006).

## I. Relief from a Judgment for Misconduct

A grant of equitable relief under Indiana Trial Rule 60 is within the discretion of the trial court. Stonger v. Sorrell, 776 N.E.2d 353, 358 (Ind. 2002) (citing Wolvos v. Meyer, 668 N.E.2d 671, 678 (Ind. 1996)). Accordingly, we review a trial court's ruling on Rule 60 motions for abuse of discretion. Id.

### A. *The Prerequisites of Indiana Trial Rule 60(B)(3)*

Indiana Trial Rule 60(B)(3) enables a court to grant relief from an otherwise final judgment for "fraud, misrepresentation, or misconduct" of an adverse party. It is worded identically to Federal Rule of Civil Procedure ("FRCP") 60(b)(3). For this reason Indiana courts routinely look to both Indiana and federal authority to interpret Indiana Rule 60(B)(3). Stonger, 776 N.E.2d at 356-57. Neither the federal nor the Indiana rule defines "fraud, misrepresentation, or misconduct." The federal advisory committee explained in 1946 that these grounds for relief

5

from a judgment were available at common law, and the rule was intended to simplify and regularize the procedures for seeking relief but not to change the grounds for relief. See FRCP 60(b) advisory committee's note (1946).

We recently held that "misconduct" under Indiana's Rule 60(B)(3) can be based on a violation of the Code of Professional Responsibility, even if the conduct at issue does not violate the rules of civil procedure. See Allstate Ins. Co. v. Watson, 747 N.E.2d 545, 548 (Ind. 2001); Smith v. Johnston, 711 N.E.2d 1259, 1264 (Ind. 1999). Federal authority interpreting FRCP 60(b)(3) clearly establishes that relief under subsection (b)(3) is available for both unintentional and intentional conduct. 12 Moore's Federal Practice, § 60.43[1][a] (3d ed. 1997) (citing cases). Specifically, "misconduct" can cover accidental omissions where there is no intent to deceive. See, e.g., Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988) ("Accidents—at least avoidable ones—[are] not [] immune from the reach of the rule."). Federal courts have also held that a violation of discovery rules, whether intentional or negligent, is "misconduct" within the meaning of FRCP 60(b)(3).[5] Based on Johnston and Watson and the similar wording of the Indiana and federal rules, we readily conclude that "misconduct" under Indiana's Rule 60(B)(3) can include both negligent and intentional violations of Indiana's discovery rules.

Indiana courts applying the "fraud" provision of subsection (B)(3) of Indiana Rule 60 have required a movant to show that fraud prevented the movant from fully and fairly presenting the movant's case. See, e.g., Morgan County v. Ferguson, 712 N.E.2d 1038, 1046 (Ind. Ct. App. 1999) (citing Humbert v. Smith, 655 N.E.2d 602, 607 (Ind. Ct. App. 1995), aff'd, 664 N.E.2d 356 (Ind. 1996)). We think a new trial for "misconduct" under the Indiana rule is governed by the same requirement. This is consistent with federal authority construing FRCP 60(b)(3), which requires a movant to demonstrate that the "fraud, misrepresentation, or misconduct" prevented the movant from fully and fairly presenting the movant's case at trial. See 12 Moore's Federal Practice, supra, at § 60.43[1][c] (citing cases). This showing is required because subsection (b)(3) creates a limited exception to the general rule of finality of judgments. If a party cannot

---

[5] See 12 Moore's Federal Practice, supra, at § 60.43[1][b] (citing Schultz v. Butcher, 24 F.3d 626, 630-31 (4th Cir. 1994); Anderson, 862 F.2d at 923; Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978)); compare Hatfield v. Edward J. DeBartolo Corp., 676 N.E.2d 395, 399 (Ind. Ct. App. 1997), trans. denied (Indiana Trial Rule 37 authorizes dismissal of an action for discovery abuses); Wozniak v. N. Ind. Pub. Serv. Co., 620 N.E.2d 33, 35 (Ind. Ct. App. 1993), trans. denied (same).

show that fraud, misrepresentation, or misconduct substantially prejudiced the party's presentation of the party's case, a court should not set aside an otherwise final judgment.

Both the Indiana and federal rules expressly require a party moving for relief for "fraud, misrepresentation or misconduct" to show "a meritorious claim or defense." This requires a showing "that vacating the judgment will not be an empty exercise." 12 Moore's Federal Practice, supra, at § 60.24[1]. In Smith v. Johnston, 711 N.E.2d 1259, 1265 (Ind. 1999), we held that Indiana Rule 60(B)'s requirement of a meritorious defense, like its federal counterpart, merely requires a prima facie showing of a meritorious defense, that is, a showing that "will prevail until contradicted and overcome by other evidence." The movant need only "present evidence that, *if credited*, demonstrates that a different result would be reached if the case were retried on the merits and that it is unjust to allow the judgment to stand." Id. (emphasis added).

The net result of the above discussion is that in order for Outback to obtain relief under Rule 60(B)(3) it must show that (1) the plaintiffs' discovery responses amounted to either fraud, negligent misrepresentation, or misconduct; (2) the fraud, misrepresentation, or misconduct prevented Outback from fully and fairly presenting its case at trial; and (3) Outback has made a prima facie showing of a meritorious defense as to liability or that the damages were excessive.

B. *Claimed Misconduct Warranting a New Trial*

Outback argues that the failure to disclose Roysdon's identity and the substance of her 1997 statement in response to Outback's 1999 interrogatories violated Indiana Trial Rules 26 and 33. Second, Outback argues that Alexander's failure to inform Outback that he intended to call Roysdon and that she would recant her 2001 deposition testimony at trial violated the duty to supplement discovery responses under Trial Rule 26(E). Outback argues that these discovery abuses constitute "misconduct" which denied Outback a fair trial. Outback also claims misconduct by plaintiffs' counsel in closing argument. As a remedy Outback seeks a new trial at which Roysdon's testimony is excluded and recovery of its trial and post-trial attorney fees from the Markleys and/or the Markleys' counsel.

As explained below, we conclude that the plaintiffs' failure to identify Roysdon as a person with knowledge of the relevant facts was a negligent if not intentional breach of its discovery

7

obligations. Subsequently, plaintiffs failed to supplement their response with the substance of her change in testimony. As these events unfolded, these omissions cascaded into a closing argument that materially misled the jury. The cumulative effect was misconduct prejudicing Outback's defense.

1. *Omission in Initial Response to Interrogatories*

Indiana Trial Rule 26 provides that parties may obtain discovery by means of written interrogatory "regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action" including "the identity and location of persons having knowledge of any discoverable matter." T.R. 26(B)(1). Information that is inadmissible under the rules of evidence may be sought if the information "appears reasonably calculated to lead to the discovery of admissible evidence." Id. The names and addresses of potential witnesses and persons with knowledge of material facts are squarely within the range of proper discovery. Trial Rule 33(B) provides that "each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to." Rule 33(C) further provides that the failure to make a timely response to interrogatories is grounds for sanction under Rule 37.

The Dram Shop Act, Indiana Code section 7.1-5-10-15.5, imposes civil liability for knowingly furnishing alcohol to a visibly intoxicated person whose intoxication causes injury to persons or property. Under Trial Rule 26(B)(1), information is discoverable if it is relevant and not privileged. If the Markleys expected to call Roysdon as a witness, both Roysdon's identity and the substance of her 1997 statement were called for by Interrogatory 12. Her account of Whitaker's state of intoxication was obviously relevant to the Markleys' Dram Shop Act claim and is not protected from disclosure by any privilege.

Indiana's Trial Rules, like earlier versions of the federal rules, do not require automatic disclosure of discoverable information. The Markleys argue that they were not required to disclose Roysdon's name and her 1997 statement because they did not intend to rely on Roysdon's testimony to support their Dram Shop claim but chose instead to "rely" on indirect and circumstantial evidence to prove Outback's actual knowledge of visible intoxication. The trial court agreed that the Markleys did not intend to rely on Roysdon because (1) the Markleys did not include Roysdon on their pre-trial witness list and first decided to call her mid-trial and (2) the

Markleys did not rely on Roysdon's 1997 statement to oppose Outback's pre-trial motion for summary judgment on the Dram Shop Act claim. The Markleys also argue that they did not disclose Roysdon's identity because she failed to respond to attempts to contact her in the two years following her 1997 statement and therefore they did not plan to call her as a witness at trial.[6]

If, as the Markleys claim, they did not expect to present direct evidence of Whitaker's intoxication through Roysdon and had no other direct evidence of Whitaker's intoxication, they would be correct that the substance of her account of Whitaker's condition at the grand opening was not required to be set forth in response to Interrogatory 12.[7] But even if we accept the claim that the plaintiffs intended to offer no direct evidence of Whitaker's conduct or condition, we think it is clear that Roysdon's identity was called for by Interrogatory 12. The Markleys' claim that they did not intend to call Roysdon is beside the point. The interrogatory called for persons with knowledge of the facts on which the Markleys relied, not for persons on whose testimony they intended to rely.

It is true, of course, that the Markleys' answer to Interrogatory 12 did not cite discrete "facts" such as whether Whitaker was staggering, smelled of alcohol, slurred his speech, or danced on the table. It is peculiar, to say the least, that plaintiffs' 1999 interrogatory answers made no such allegations, given Roysdon's 1997 statement to Alexander. It is also notable that plaintiffs made no effort in Roysdon's 2001 deposition to shake her testimony that Whitaker was "fine." At oral argument the Markleys' appellate counsel suggested, based on facts not of record, that difficulties in communication between Alexander and McClellan, who handled Roysdon's deposition, may have been a factor. That may be true. And the Markleys may have discredited Roysdon's 1997 account and therefore intended not to call her because they believed she was unreliable. Nevertheless, Roysdon was obviously present at the grand opening and was a person with knowledge of the facts the Markleys' response asserted. As a result of her 1997 visit, Markleys' counsel knew this. So in that respect the 1999 interrogatory answer was patently deficient under any supposition as to the underlying reasons for that deficiency.

---

[6] The portion of the record the Markleys cite in support of this contention is solely testimony of Roysdon that does not seem to support the claim. Roysdon seems to testify in her post-trial deposition that she did not return calls from Outback and/or its attorneys but does not seem to confirm any refusal to communicate with Alexander.

[7] The response date cannot be determined from the record before us. The defendants' brief asserts the response was in 1999.

If the Markleys' attorneys had any doubt about this, it is resolved by the obligation to construe an interrogatory fairly. Interrogatories should not "be interpreted with excessive rigidity or technicality, but a rule of reason should be applied." Pilling v. Gen. Motors Inc., 45 F.R.D. 366, 369 (D. Utah 1968); see also Dotson v. Bravo, 321 F.3d 663, 667 (7th Cir. 2003) (incomplete or evasive responses to interrogatories support dismissal of an action); 7 Moore, supra, at § 33.101. Additionally, answers to interrogatories "must be responsive, full, complete and unevasive." Pilling, 45 F.R.D. at 369. This commonsense approach to the interpretation of interrogatory requests furthers the purposes of discovery, namely, to allow parties to obtain evidence necessary to evaluate and resolve their dispute based on a full and accurate understanding of the true facts, to promote settlement, to remove surprise from trial preparation, and to narrow the disputed issues and facts requiring trial. 6 Moore, supra, at § 26.02; Canfield v. Sandock, 563 N.E.2d 526, 528 (Ind. 1990); Pierce v. Pierce, 702 N.E.2d 765, 767 (Ind. Ct. App. 1998), trans. denied; Hatfield, 676 N.E.2d at 399.

The Markleys point out that even if they did not disclose Roysdon's identity or her 1997 statement in response to Interrogatory 12, they disclosed Roysdon's name in response to a different interrogatory asking for facts supporting their habitual drunkard claim. This is not an answer. Whitaker and Roysdon had worked together at another restaurant before the grand opening, and Roysdon may well have had information about Whitaker's past but known nothing of his condition at the grand opening. In short, the facts related to Whitaker's being a "habitual drunkard" are obviously different from those bearing on his state of intoxication at the Outback grand opening.

The immediate effect of omission of Roysdon as a person with knowledge of the facts supporting the claim of visible intoxication is speculative. If Roysdon had been identified by the plaintiffs in response to Interrogatory 12, a number of scenarios might have evolved. Outback might have deposed her earlier than it did, and her testimony might have adhered to the version she gave Alexander in 1997. Whether or not this is the case, if the plaintiffs had identified her as a person with knowledge bearing on Whitaker's state of visible intoxication, Outback might well have asked Roysdon about any conversations she had with plaintiffs' attorneys. All of this is conjecture on our part. The significant point is that, as subsequent events developed, Outback

makes a persuasive claim that the trial would have unfolded differently if the Markleys' attorneys had discharged their initial discovery obligations.

The parties dispute, and the record does not resolve, whether the failure to disclose Roysdon's identity and 1997 statement in response to Interrogatory 12 was an act of carelessness, failure of communication between plaintiffs' attorneys, or part of an intentional scheme to defraud Outback and deceive the court and jury. Outback contends that the plaintiffs' attorneys intentionally suckered it into positioning itself as disingenuous before the jury by a purposeful concealing of Roysdon's testimony. If so, and if the Markleys intended from the outset to present Roysdon as a witness for the plaintiffs, they were required to disclose both Roysdon's identity and the substance of her 1997 statement. Indiana discovery rules are specifically designed to avoid surprise and the trial by ambush that Outback charges was designed by the plaintiffs. See Canfield, 563 N.E.2d at 528. We have consistently rejected a "gaming view" of the litigation process. In Johnston we held that a default judgment must be set aside under Trial Rule 60(B)(3) for misconduct where the plaintiff's attorney filed suit and pursued a default judgment without notifying the attorneys whom she had been advised in writing were representing the defendant in the matter. 711 N.E.2d at 1260-61. In response to the plaintiff's argument that provision of notice would "make it nearly impossible to obtain a default judgment against health care providers," we stated that default judgments are not "traps" to be set for "unsuspecting litigants" and rejected "the gaming view of the legal system" presented by the plaintiff's argument. Id. at 1264; see also McCullough v. Archbold, 605 N.E.2d 175, 179 (Ind. 1993) (citing Mauricio v. State, 476 N.E.2d 88, 95 (Ind. 1985) (De Bruler, J., dissenting) ("The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned while maintaining 'poker game' secrecy for its own witnesses.")); Taylor v. United States, 484 U.S. 400, 419 (1988) (Brennan, J., dissenting) ("[D]iscovery is not a game."); United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (the purpose of pretrial discovery is to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent"); Harvey v. Horan, 285 F.3d 298, 317-18 (4th Cir. 2002) ("There was a time when concealment and gamesmanship were accepted as part and parcel of the adversarial process of the criminal justice system. . . . [W]e decidedly rejected this system long ago . . . ."). However, whether the omission was intentional or negligent, and even if, as appears here, only the attorneys and not the Markleys are responsible for the nondisclosure, we readily conclude

11

that the initial omission was a violation of Indiana Trial Rules 26 and 33 and therefore "misconduct" within the meaning of Rule 60(B)(3). Whether it was prejudicial remains to be explained.

### 2. *Failure to Supplement the Interrogatory Answer*

Outback argues that a second instance of misconduct occurred when the plaintiffs failed to supplement their interrogatory response when they decided to call Roysdon as a witness. The Markleys respond that Outback waived any objection by choosing to cross-examine Roysdon on her change in testimony. The Markleys also argue that they decided to call Roysdon only after the trial had started and that the duty to supplement discovery does not continue during trial. They further contend that the information relating to Roysdon was work product. As explained below, none of these responses is adequate.

### a. *Duty to Supplement After Trial Begins*

Trial Rule 26(E) provides several exceptions to the general rule that there is no continuing duty to supplement discovery responses that were "complete when made." Among these is Trial Rule 26(E)(2)(a), which provides that a party has a duty to supplement a prior discovery response if "he obtains information upon the basis of which he knows that the response was incorrect when made." Under Rule 26(E)(2)(b), there is also a duty to supplement a response that was correct when made but is no longer true if, under the circumstances, "a failure to amend the response is in substance a knowing concealment." At the point the plaintiffs determined to present Roysdon's testimony, the omission of the substance of that testimony from their answer to Interrogatory 12, even if "correct when made," became "no longer true" and a "knowing concealment" as those terms are used in Rule 26(E)(2)(b).

The Markleys first argue that the duty to supplement discovery does not continue during trial. Outback cites federal authority for the proposition that the duty to supplement under FRCP 26(e) is an ongoing obligation. See Smith v. Ford, 626 F.2d 784, 795 (10th Cir. 1980) (citing Weiss v. Chrysler Motors Corp., 515 F.2d 449, 457 (2d Cir. 1975)). Indiana Trial Rule 26 does not explicitly address whether a party's duty to supplement continues during trial. But, importantly, it does not say this duty ceases at the onset of trial. We see no reason why the duties imposed by Trial Rule 26(E)(2)(a) and (b) stop at the outset of trial. To permit a party discovering

12

its own error or omission to remain silent would permit that party to benefit from its own concealment or error. Whether the initial response to Interrogatory 12 was intentionally or inadvertently incomplete, the duty to supplement was triggered by either subsection (a) or subsection (b). Trial Rule 26(E) requires that a supplemental response be "seasonably" made. This suggests a need for timely response. We think it also indicates that it may be reasonable and appropriate to modify the method of supplementing a discovery response if new information is discovered on the eve of or during trial. Here no effort at all was made. That is surely inadequate by any measure.

b. *Work Product*

The Markleys argue that the substance of Roysdon's 1997 statement to Alexander is protected as attorney work-product. This claim is neither preserved nor correct. In the first place, they made no work-product objection to the interrogatory. In any event, work-product is not a valid ground for the plaintiffs' omissions.

The Court of Appeals rejected this argument on the ground that work-product is limited to documents or tangible things and Roysdon's statement was never memorialized in writing. We do not agree that work-product is limited to tangible items. An attorney cannot be forced to disclose the attorney's mental impressions, etc., whether or not they are reduced to writing. Hickman v. Taylor, 329 U.S. 495, 510 (1947) (the work product of a lawyer reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" is protected). But Roysdon's statement is not attorney work-product for a more fundamental reason. The purpose of the privilege is to protect the mental impressions and legal theories of attorneys and their clients. Roysdon's statements to Alexander do not reveal mental impressions or legal theories. They are simply potential evidence that enjoys no privilege. Accordingly, they are not protected as work-product. Kristoff v. Glasson, 778 N.E.2d 465, 471 (Ind. Ct. App. 2002).

c. *Waiver*

In reliance on our decision in O'Connell v. State, 742 N.E.2d 943, 948 (Ind. 2001), the Court of Appeals agreed with the trial court that Outback's decision to cross-examine Roysdon

waived any objection based on the failure to supplement discovery. In O'Connell we held that when a party is confronted with a surprise witness, ordinarily the proper remedy is to move for a continuance and the failure to move for a continuance may waive any alleged error. O'Connell dealt with a witness who had not been identified by either side and came forward with relevant evidence after the trial had started. The defendant objected to the witness at trial, and the trial court allowed a continuance to permit the defendant to depose the witness. The State had made no attempt to conceal the witness from the defense, and the defense had not deposed the witness before the trial. Under this circumstance a continuance is ordinarily appropriate to permit the defendant to pin down the testimony that could be expected of the new witness. Here, however, Outback had no reason to seek a continuance. The Markleys presented a witness whom the defense had expected to call. This was a "surprise" only in that the plaintiffs, not the defendants, had called her. At the time she was called, Outback had no reason to believe she would not adhere to her 2001 deposition testimony.

Outback also argues that its decision to cross-examine Roysdon and impeach her with her 2001 deposition testimony did not forfeit other remedies (a continuance, a mistrial, exclusion of Roysdon's testimony) because Outback was unaware of Roysdon's 1997 statement when it elected to cross-examine Roysdon. Outback argues that it was disadvantaged in cross-examining Roysdon because its ignorance of the 1997 statement prevented it from showing the jury that she had flip-flopped more than once. Outback notes that Alexander in closing argument portrayed Roysdon as a courageous witness who, after feeling guilty for years, decided at the last minute to be guided by her conscience, stop lying, and tell the truth. Outback argues that the jury would have considered Roysdon's testimony less admirable if it had known of Roysdon's 1997 statement and the fact she had changed her story twice, not just once. We doubt that Roysdon's testimony would have been less credible if all the facts were on the table, but we agree that Outback cannot be charged with waiver when it is ignorant of all relevant facts due to misconduct on the part of its opponent. We think that the most important reason why Outback's decision to cross-examine Roysdon did not waive its objection to the belated disclosure of Roysdon's recanting of her deposition testimony is that Outback was not advised in advance of Roysdon's change in testimony and, therefore, had no time to evaluate whether to seek a continuance, move for a mistrial, or redepose Roysdon to explore the circumstances of her change of heart. A proper supplement to plaintiffs' response to Interrogatory 12 would have identified Roysdon and stated the

14

substance of what she would say.  That information was intentionally withheld from Outback by plaintiffs' attorneys.  Without it no waiver can be claimed.

3.  *Closing Argument*

Outback raises a final claim of misconduct by plaintiffs' attorney based on closing argument.  David Markley was driving the motorcycle.  His blood alcohol tested at .07% or .08% over an hour after the collision with Whitaker.[8]  The facts made clear that he had not ingested alcohol in the period of time after the collision and before the blood test that was administered at the hospital at 12:13 am on July 22.  The parties agreed that Outback would not claim comparative fault on the part of either of the Markleys and in exchange the plaintiffs would claim no punitive damages.  At closing argument, in asking for a $120 million damage award Alexander argued:

> My clients didn't want anybody punished.  Good thing, because this is the perfect case for punitive damages . . .

Outback contends that this breached the agreement not to seek punitive damages.  They urge this as a freestanding ground for finding misconduct on the part of the plaintiffs.  Viewed in isolation, we would agree that this argument is not a basis for overturning a jury verdict.  But later in his closing, Alexander attacked the credibility of Outback's counsel:

> Remember when counsel for the Defendant (inaudible) Outback Steakhouse bar stood up here in opening and he told you what the evidence was going to show? . . . Patrice Roysdon, she's going to come in here, she's their witness, and she's going to tell you he wasn't drunk.  He made you all kinds of promises about the evidence.  Now he wants to stand up here and act like he didn't do that, and by the way, we're real sorry for these people, just don't give them nothing.  Sometimes it's embarrassing to be in this business.

The plaintiffs' counsel's shortcomings in discovery that had not yet come to light were the basis of the claim that the defendant was disingenuous.  In this context, this argument constituted "misconduct" by Alexander.

B.  *Prejudice to Outback's Ability To Present Its Case*

---

[8] Markley's serum alcohol content was 98 milligrams per deciliter.  The parties dispute whether this figure converts to a whole blood alcohol concentration of .07% or .08%.

In order to obtain a new trial based on the Markleys' counsel's misconduct, Outback must establish that the misconduct prejudiced its right to a fair trial. Outback argues that it would have handled this case differently had Roysdon's 1997 statement been disclosed in 1999 in response to Outback's interrogatories and had it known that Roysdon planned to recant her 2001 deposition testimony at trial. Specifically, Outback claims that if it had known of Roysdon's 1997 statement it would have evaluated the case differently and attempted to settle. Without the benefit of this information, Outback's view of the case was that plaintiffs had no direct evidence that Outback knew Whitaker was visibly intoxicated and that the plaintiffs' circumstantial evidence of Outback's knowledge was insufficient to impose liability.

Roysdon's testimony was critical to the Markleys' Dram Shop Act claim. She was the only witness who testified to Whitaker's visible intoxication at Outback and, critically, to Outback's employee's knowledge of Whitaker's condition. Without Roysdon's testimony, the only evidence the Markleys offered of Outback's knowledge was the testimony of various individuals who attended the grand opening. They established only that Outback served free alcoholic drinks at the grand opening and did not keep track of how many drinks each attendee consumed. This in itself establishes nothing as to Whitaker's condition, and Whitaker himself testified that he had three or four drinks at Van's after he left Outback. Based on the perceived weakness of the plaintiffs' case with respect to Whitaker's intoxication and Outback's knowledge of visible intoxication, Outback says it decided to litigate. We assume Outback is correct in claiming that Roysdon's story would have affected its assessment of its liability. It remains entirely speculative whether the case would have been settled. We have no basis to conclude that the parties would have agreed on a damage award even if liability were conceded.

We think the more persuasive point is that counsel for Outback, based on Roysdon's 2001 deposition testimony, told the jury in opening statement that no witness establishing Whitaker's visible intoxication would be produced and that Roysdon would testify that he was not intoxicated. Alexander in closing pounded on the claimed "embarrassing" conduct by Outback's counsel. Roysdon's undisclosed change of story thus simultaneously destroyed not only Outback's theory of the case but also its credibility with the jury. Outback therefore credibly contends that its handling of the case would have been substantially different, and the damages, if not the liability, would have been materially different if plaintiffs' counsel had discharged their

16

obligations. Outback contends that the Indiana Trial Rules acknowledge the importance of finality of judgments, but Rule 60(B)(3) also recognizes the importance of fairness and integrity of the fact-finding process. At oral argument appellate counsel for the Markleys offered as an explanation for the failure to identify Roysdon lack of communication between trial counsel for the Markleys. Assuming this is correct, it nonetheless imposed on Outback the consequences of plaintiffs' counsel's shortcomings. As already noted, negligent as well as intentional misconduct is sufficient under Trial Rule 60(B)(3). Moreover, some of the misconduct is difficult to explain as oversight. Alexander, in closing, purposely took unfair advantage of the defendants' ignorance of the whole story.

C. *Meritorious Defense*

Trial Rule 60(B)(3) is patterned after its federal counterpart, FRCP 60(b)(3) and has been in the Indiana Trial Rules since they were adopted in 1970. See Stonger, 776 N.E.2d at 355-56. Relief under Trial Rule 60(B)(3) requires Outback to make a prima facie showing of a "meritorious claim or defense," also a long established requirement under the federal rule. Johnston, 711 N.E.2d at 1265 (citing cases). One way to meet this requirement is to identify evidence that, if credited, demonstrates that a different result would be reached if the case were retried on the merits. Id. A "meritorious defense" for these purposes includes a showing that either liability is in doubt or the damages awarded were excessive or inadequate. See, e.g., Whelchel v. Cmty. Hosp. of Ind., Inc., 629 N.E.2d 900, 903 (Ind. Ct. App. 1994), trans. denied; Sanders v. Kerwin, 413 N.E.2d 668, 671 (Ind. Ct. App. 1980). A "meritorious defense" is also established by showing that the judgment was "unfairly procured." Schultz v. Butcher, 24 F.3d 626, 631 (4th Cir. 1994).

It is, of course, somewhat speculative what the jury's assessment of liability or damages would have been in this case if plaintiffs had made a proper initial response and supplement to Outback's interrogatory and avoided any reference to punitive damages in closing argument. Federal authority, including cases that predate the adoption of this same language in the Indiana Trial Rules, establishes that the "meritorious defense" requirement does not require a showing that a different result would have been obtained without the misconduct. Schultz, 24 F.3d at 631 ("[N]ew evidence does not have to be result altering to warrant a new trial on a Rule 60(b)(3)

17

motion."); see also Rozier v. Ford, 573 F.2d 1332, 1339 (5th Cir. 1978) ("Although Rule 60(b)(3) applies to misconduct in withholding information called for by discovery, it does not require that the information withheld be of such a nature as to alter the result in the case." (citation omitted)).  As the Third Circuit explained in an early opinion under the federal rules, "a litigant who has engaged in misconduct is not entitled to 'the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent.'" Seaboldt v. Pennsylvania R.R. Co., 290 F.2d 296 (3rd Cir. 1961) (quoting Minneapolis, St. Paul & S.S. Marie Ry. Co. v. Moquin, 283 U.S. 520, 521-22 (1931)).  We agree with Outback that the same doctrines apply under Indiana Trial Rule 60(B)(3).  We cannot permit the award in this case to stand based, as it is, on a series of shortcomings by plaintiffs' counsel, any one of which might be overlooked but whose cumulative effect produces a result that is "unfairly procured."  Outback suggests denying attorney fees as a potential remedy.  We recognize that the effect of ordering a new trial is once again to make the Markleys innocent victims, this time at the hands of their own lawyers.  But the Markleys chose their counsel and this series of missteps by plaintiffs' counsel produced a severely unfair trial.  For that reason, it is not adequate to deny the attorneys their fee.  We have no confidence in the result and to permit it to stand even without attorney compensation is unfair to Outback.  More importantly, for future cases, to permit the judgment to stand would create too great an incentive to play fast and loose with the judicial process.

D.  *Attorney Fees and Other Remedies*

In addition to a new trial, Outback seeks discovery sanctions under Trial Rule 37 to recover its trial and post-trial attorney fees and to exclude Roysdon's testimony in any subsequent proceedings.  Neither the trial court nor the Court of Appeals addressed Outback's requests for attorney fees and for exclusion of Roysdon's testimony.  Rule 37 authorizes imposition of sanctions, including exclusion of evidence and attorney fees, for a party's failure to respond to interrogatories.  However, the Rule appropriately provides that sanctions should not be imposed when circumstances make sanctions unjust.  T.R. 37(D).  There is no evidence the Markleys were involved in the discovery violations.  Both exclusion of Roysdon's testimony at any subsequent proceedings and an order compelling the Markleys to pay Outback's attorney fees would punish the Markleys for their counsel's conduct.   We therefore deny Outback's request for this relief.

We cannot resolve from this record whether the plaintiffs' failure to give a complete response to Interrogatory 12 or the failure to supplement that response, or both, were intentional or negligent. For this reason we do not order plaintiffs' counsel to pay Outback's attorney fees at this stage.

## II. Instruction Error

Outback argues that it is entitled to a new trial based on an erroneous instruction as to the standard for a share of comparative fault to be assessed against Van's. Final Jury Instruction 9 stated in relevant part:

> In order for fault to be assessed against a non-party, Van's Lounge, the Defendants have the burden of proving the following propositions by a preponderance of the evidence:
>
> 1. That Van's Lounge served William Whitaker alcohol;
>
> 2. That William Whitaker was visibly intoxicated at the time he was served alcohol;
>
> 3. That Van's Lounge had actual knowledge that William Whitaker was visibly intoxicated at the time he was served alcohol; and
>
> 4. That William Whitaker's intoxication from alcohol served to him by Van's Lounge was a proximate cause of the collision between Whitaker's car and the motorcycle being ridden by the Markleys.

This instruction in effect required the jury to find all elements of liability before it could allocate fault to Van's.

Outback tendered an instruction that would allocate fault to Van's to the extent the plaintiffs' injuries were "caused by the fault" of Van's. It read

> [T]he Defendants have claimed certain specific defenses and the Defendants have the burden of proving those claims by a preponderance of the evidence. The Defendants claim that Plaintiffs' injuries and damages were caused by the fault of the non-parties, William Whitaker and Van's bar at the airport. In addition, the Defendants claim that the Plaintiffs, David and Lisa Markley, are partially at fault for the accident and their own injuries.

Outback's motion to correct errors sought a new trial on the ground that this instruction incorrectly stated the law governing non-party fault. The trial court acknowledged that Instruction 9

19

incorrectly stated that in order to allocate fault to Van's as a non-party the jury has to find all the elements of civil liability under the Dram Shop Act. The trial court recognized that under the Comparative Fault Act, Indiana Code section 34-6-2-88, a non-party must "cause or contribute to cause" injury or damages but that a finding of liability is not necessary to allocate fault to a non-party. The trial court concluded, however, that Outback had not preserved its objection to Instruction 9. Specifically, the trial court noted that Outback failed to object to Instruction 9 at trial. The trial court concluded that Outback's proposed instruction did not preserve the issue because its last sentence related to a comparative fault claim against the Markleys that Outback had agreed to drop after the close of evidence.

Outback contends that its tendered instruction contained a correct statement of the law and therefore was sufficient to preserve objection to Instruction 9 notwithstanding the inclusion of a claim against the Markleys which had been dropped from the case. After comparative fault of the Markleys was removed from the case, reference to it was no longer appropriate. But deletion of the final sentence of Outback's tendered instruction could be readily accomplished without affecting the instruction on the point at issue. Outback's tendered instruction was based on Indiana's pattern jury instruction and correctly stated the law governing non-party fault. A tender of a proper instruction is sufficient to preserve an objection to an improper instruction on the same point. PSI Energy, Inc. v. Roberts, 834 N.E.2d 665, 667 (Ind. 2005). Accordingly, we conclude that Outback's tendered instruction was sufficient to preserve its objection to Instruction 9.

We are not convinced, however, that Outback is entitled to a new trial on this ground. The bartender and waitress who served Whitaker at Van's testified that Whitaker was showing symptoms of intoxication when he arrived at Van's and that they served him only Diet Coke. Instruction 9 told jurors that in order to allocate fault to Van's they had to find that Van's served Whitaker alcohol with knowledge that Whitaker was intoxicated. The testimony of Van's employees established that Van's had actual knowledge of Whitaker's intoxication at the time they served him. The jury nonetheless allocated zero fault to Van's. The only plausible explanation for the jury's allocation of fault is that the jury credited Van's employees' testimony that they realized that Whitaker was intoxicated when he arrived at Van's and accordingly did not serve Whitaker alcohol. Outback's tendered instruction, like Instruction 9, would have required the

20

jury to find that Van's served Whitaker alcohol. Because a finding that Van's served Whitaker alcohol is inconsistent with the jury's allocation of fault using the standard provided in Instruction 9, we conclude that the giving of Instruction 9 was harmless error. Accordingly, we do not agree that Outback is entitled to a new trial on this ground.

### III. An Attorney's Duty of Candor in Dealings with the Court

Outback argues that Alexander made material misrepresentations to the court which warrant relief from the judgment under Rule 60(B).[9] The facts underlying this issue are as follows. The plaintiffs called Bruce McLaren, at the time an attorney and former magistrate judge,[10] who had attended the grand opening celebration at Outback. McLaren stated that he had not been to an event like the Outback grand opening "since I was in a fraternity." Before McLaren testified Alexander told the court and opposing counsel that McLaren had been indicted two weeks earlier in federal court for wire fraud and that Alexander represented McLaren in those criminal proceedings. Alexander asked the court to direct Outback not to inquire about the indictment on the ground that the indictment was not an impeachable event. Outback argued that it should be able to inquire into the federal indictment because McLaren's reliance on Alexander to represent him in a criminal matter that involved his liberty and his livelihood as an attorney was a potential source of bias.

The trial court concluded that although wire fraud is a crime suggesting dishonesty, an indictment is not an impeachable event under Indiana Rule of Evidence 609(a) because that rule requires conviction. The trial court granted Alexander's request to limit the scope of cross-examination and excluded inquiry into the criminal charges against McLaren.[11]

After the trial, Outback learned that, concurrent with the indictment, McLaren had pled guilty to the federal charges two weeks before he testified at the Markleys' trial. Although Alexander had signed the plea agreement as McLaren's counsel, he did not disclose the agreement to

---

[9] The motion cited only Rule 60(B)(1), which affords relief for "mistake, surprise, or excusable neglect." The grounds argued, however, were "newly discovered evidence," a 60(B)(2) ground, and "fraud" and "misconduct," which are under 60(B)(3) as grounds for a new trial.

[10] McLaren's resignation from the bar is reported at <u>In re McLaren</u>, 850 N.E.2d 400 (Ind. 2006).

[11] Although we need not address the merits of this ruling, we note that it did not respond to Outback's contention that the cross-examination related to the claim that McLaren was biased, not that he was impeachable by reason of the indictment.

21

the court or to Outback and affirmatively represented that McLaren had only been indicted in federal court.

Indiana Rule of Evidence 609(a) provides that conviction of a crime involving dishonesty or false statement is an impeachable event. Wire fraud is a crime involving false statement because misrepresentation is an element of the crime. See United States v. Pritchard, 773 F.2d 873, 876 (7th Cir. 1985). Outback cites Specht v. State, 734 N.E.2d 239, 240 (Ind. 2000) and McDaniel v. State, 268 Ind. 380, 383, 375 N.E.2d 228, 230 (1978) for the proposition that a guilty plea is equivalent to a conviction under Rule 609(a). The Markleys respond that in Specht the court had accepted the defendant's guilty plea, but in this case the district court had not yet accepted McLaren's plea. The Markleys argue that a guilty plea is not the equivalent of a conviction before the court accepts the plea because until then the defendant can withdraw the plea and proceed to trial. They are correct that Federal Rule of Criminal Procedure 11(d)(1) provides that a defendant can withdraw a guilty plea at any time before the court accepts the plea for "any reason or no reason." Once the court accepts the plea, the defendant may withdraw it only if no sentence has been imposed and if the defendant can show "a fair and just reason" for withdrawal. Fed. R. Crim. P. 11(d)(2)(B). We agree that a guilty plea that has not yet been accepted by the court is not the equivalent of a conviction under Rule 609(a). The Rule draws a bright line at conviction before a prior crime may be used to impeach a witness. A high probability of guilt is not enough. We assume this issue will be moot at any retrial.

Outback argues that Alexander's description of McLaren's status before the federal court constitutes "fraud upon the court," "newly discovered evidence," and "misconduct" under Trial Rule 60(B) and that Outback is therefore entitled to relief from a judgment. Subsection (B)(2) of Indiana Trial Rule 60 provides relief from a judgment for "newly discovered evidence." Relief from judgment based upon newly discovered evidence requires a showing that the newly discovered evidence is material, is not merely cumulative or impeaching, was not discoverable by due diligence, and would reasonably and probably alter the result. State ex rel. Huppert v. Paschke, 637 N.E.2d 150, 153 (Ind. Ct. App. 1994) (citing Freels v. Winston, 579 N.E.2d 132 (Ind. Ct. App. 1991)). These showings are required because subsection (B)(2) is concerned with correcting erroneous judgments stemming from the unobtainability of evidence. Because Outback intended to use McLaren's guilty plea for impeachment, we conclude that Outback is not entitled

22

to relief from a judgment based on subsection (B)(2) of Trial Rule 60. "Fraud on the court" under the savings clause of Rule 60(B) and "misconduct" under subsection (B)(3) both require a showing that the fraud or misconduct prevented the movant from fully and fairly presenting the movant's case. See Rocca v. Rocca, 760 N.E.2d 677, 680 (Ind. Ct. App. 2002), trans. denied. We conclude that Outback was not significantly prejudiced by Alexander's concealment of McLaren's guilty plea because Outback offered the plea only for impeachment and also because McLaren's testimony was cumulative of other testimony about the atmosphere of the Outback grand opening celebration. Accordingly, we conclude that Outback is not entitled to relief from a judgment for "fraud on the court" or "misconduct."

Notwithstanding our conclusion that Alexander's conduct is not grounds for relief from a judgment under Trial Rule 60(B), we conclude that his conduct warrants investigation by the Indiana Disciplinary Commission. Rule 3.3(a)(1) of the Indiana Rules of Professional Conduct provides that an attorney "shall not knowingly make a false statement of fact or law to a tribunal." The commentary explains that candor is necessary to preserve the integrity of the adjudicative process. Rule 4.1(a) provides that an attorney shall not "knowingly make a false statement of material fact or law to a third person" in the course of representing a client. The commentary to this Rule explains that misrepresentations include "partially true but misleading statements." Rule 8.4(d) provides that it is also misconduct for an attorney to engage in conduct "prejudicial to the administration of justice." We leave to the Disciplinary Committee to consider whether these facts are as they appear from this record and if so whether any charges are appropriate.

### Conclusion

Outback raised several issues before the Court of Appeals that are not raised in its petition for transfer. Because we agree that Outback's motion for a new trial must be granted, we need not address these issues. The order of the trial court denying Outback's motion for relief from a judgment is reversed. This cause is remanded with direction to vacate the judgment and schedule a new trial.

Shepard, C.J., and Dickson, Sullivan, and Rucker, J.J., concur.

23