

FILED

Oct 31 2018, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Darlene R. Seymour
Ciyou & Dixon, P.C.

Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

Meredith L. McIntyre
McIntyre & Smith

Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE ADOPTION OF
L.G.K.


J.K.,

*Appellant-Respondent,*

v.

G.C.,

*Appellee-Petitioner.*

October 31, 2018

Court of Appeals Case No.
18A-AD-371

Appeal from the Lawrence Circuit
Court

The Honorable Andrea K.
McCord, Judge

Trial Court Cause No.
47C01-1702-AD-5

**Pyle, Judge.**

## Statement of the Case

G.C. ("Putative Father") filed a motion to set aside the adoption of the minor

child L.G.K. ("Child") by J.K., her maternal grandfather ("Maternal

Grandfather"). Maternal Grandfather appeals, raising one issue for our review, which we restate as whether the trial court properly granted Putative Father's motion for relief from judgment. We conclude that because Maternal Grandfather presented an adoption petition to the trial court in which E.K. ("Mother") fraudulently claimed that she did not know the identity of Child's father, the trial court did not err in granting Putative Father's motion for relief from judgment and setting set aside the adoption.

We affirm.

## Issue

Whether the trial court properly granted Putative Father's motion for relief from judgment.

## Facts

The facts in the light most favorable to Putative Father are that Mother and Putative Father dated and had an intimate relationship from December 2013 through October 2014. In December 2014, Mother told Putative Father that she was pregnant. Putative Father saw Mother one time during the pregnancy and did not provide support. Putative Father's parents ("Paternal Grandparents"), however, maintained contact with Mother throughout the pregnancy.

Child was born on August 20, 2015. Putative Father was not present at the birth, but Paternal Grandparents visited Mother at the hospital shortly after Child was born, and Putative Father's mother informed him that Child had

been born. Putative Father's name was not listed on Child's birth certificate, and Putative Father did not establish paternity or register with the Putative Father Registry. Putative Father testified that he and Mother took a DNA test using a product obtained from a drugstore, and that the test showed that he was Child's biological father. Mother disputes this.

[5] After Child was born, Mother and Putative Father lived together for approximately six months and acted as parents to Child. Both Putative Father and Paternal Grandparents established a relationship with Child. Child calls Putative Father "dad" and calls Paternal Grandparents "granny" and "poppy." Mother and Putative Father eventually separated, but Putative Father continued to visit regularly with Child. Mother and Putative Father jointly hosted a birthday party for Child when Child turned one year old. Maternal Grandfather attended the party.

[6] Mother led Putative Father to believe that he was the biological father of Child. At some point, Mother told Putative Father that she was going to the prosecutor's office to establish child support but did not do so. She requested child support from Putative Father of $400.00 per month, which Putative Father paid at times and Mother accepted. Mother threatened to take Putative Father to court and deny him visitation unless he paid her child support. Mother and Putative Father discussed going to the Indiana Department of Health to have Putative Father listed on Child's birth certificate; however, this was not done. At one point, Mother agreed to have Putative Father's name placed on Child's birth certificate, but she did not do so.

[7] On February 17, 2017, B.P., Mother's then fiancé, filed a petition to adopt Child. Putative Father was not provided with notice of the petition. On May 10, 2017, Maternal Grandfather filed a petition for adoption ("Second Adoption Petition"), and B.P. agreed to it. Putative Father was not provided with notice of the Second Adoption Petition. The Second Adoption Petition stated that the biological father was unknown and had not been disclosed by Mother to Maternal Grandfather or Maternal Grandfather's attorney. The Second Adoption Petition was granted, and the decree of adoption was issued on May 22, 2017.

[8] On June 19, 2017, under a separate cause number, Putative Father filed a petition to establish paternity and for orders relating to custody, visitation, and support. Putative Father continued to have contact with Child after the adoption decree was issued, though Putative Father did not learn of Child's adoption until Mother moved to dismiss his paternity action. Putative Father registered with the Putative Father Registry in August 2017.

[9] On August 4, 2017, Putative Father filed a motion to set aside the adoption, alleging that Mother and Maternal Grandfather defrauded him by "allowing him to have a regular visitation schedule with this child, by taking his regular child support payments, and allowing him to be this child's father, while behind the scenes, [Mother] was planning to have this child adopted by first her fianc[é], and then by her father." (App. Vol. 2 at 9). Maternal Grandfather

filed a motion to dismiss Putative Father's motion.  Putative Father responded

and, additionally, moved for relief from judgment.[1]

[10]     The trial court held an evidentiary hearing on November 28, 2017.  On January

25, 2018, the trial court granted Putative Father's motion to set aside the

adoption.[2]  The court issued a written order, determining (among other things)

that:

> [Mother] held [Putative Father] out to be the [Child's] Father to
> [Putative Father], his family, her family and to the child up to
> and including the summer of 2017.  The photos and text
> messages entered into evidence establish that [Putative Father]
> and his family have a loving relationship with [Child].
>
> Based on the Court's observation of [Mother] and the evidence
> presented, the Court does not find her to be credible.

(App. Vol. 2 at 10).  The trial court concluded (in relevant part) that:

> The child's rights as well as [Putative Father's] rights are not well
> served by denying notice and a hearing to a father whose identity
> and location were known by the Petitioner.  Further, by not
> setting aside this order, the child's right to an involved and loving
> parent is compromised. . . . [Putative Father] has demonstrated
> that he established a substantial relationship with the child and
> was not given the right to contest the adoption or proceed with
> his Paternity matter, and/or the Petitioner procured a fraud upon

---

[1] Father's motion for relief from judgment was not provided in the record on appeal.

[2] The trial court also denied Mother's motion to dismiss the paternity action, although it is unclear when the trial court consolidated the paternity action with the adoption matter.

the Court by stating in his Petition that "'The biological father is unknown and has not been disclosed to the petitioner or petitioner's attorney by the Mother'" when it was clear to the Court that the Petitioner knew that [Putative Father] had been acting as and was believed to be the child's Father, therefore invoking the Court to set the Adoption aside under Indiana Trial Rule 12(b)(6) [sic]. Further, that [Putative Father] was fraudulently induced, through material misrepresentations by [Mother], to not exercise his obligations or rights to take legal action to establish his rights legally. The Court further finds that [Putative Father] had standing to join in the Adoption because of the fraudulent actions of the Petitioner and to protect his due process rights allowing him to be equally protected as a parent and/or to proceed with his right [to] establish legally whether or not he is the Father. Further, he is furthering the rights of the child to determine whether she will be able to continue with their relationship and a relationship with her possible half-sister. [Putative Father] should have been notified of the filing of any Petition for Adoption of the minor child, [L.G.K.].

(App. Vol. 2 at 18-19).

# Discussion

[11]    The issue before us is whether the trial court properly granted Putative Father's motion for relief from judgment. Maternal Grandfather argues that the trial court erred in granting the motion for relief from judgment, and that the trial court should have upheld the adoption decree and dismissed Putative Father's paternity action. According to Putative Father, the trial court reached the correct result because Mother and Maternal Grandfather perpetrated fraud on the court by misrepresenting their knowledge of the existence of Putative Father as Child's biological father. In his reply brief, Maternal Grandfather maintains

that "[Putative] Father cannot cry "'fraud'", as Mother is not to blame for [Putative Father's] own inaction in failing to register" with the Putative Father Registry. (Maternal Grandfather's Reply Br. 9).[3]

[12] The trial court's decision whether to set aside a judgment is given substantial deference on appeal, and we will reverse only if the trial court abused its discretion. *In re Adoption of L.C.E.*, 940 N.E.2d 1224, 1226 (Ind. Ct. App. 2011). An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* In reviewing the trial court's decision, we will not reweigh the evidence or substitute our judgment for that of the trial court. *Id.*

[13] Trial Rule 60 motions address the equitable grounds justifying relief from the legal finality of the final judgment. *Blichert v. Brososky*, 436 N.E.2d 1165, 1167 (Ind. Ct. App. 1982). Indiana Trial Rule 60(B)(3) provides that a court may relieve a party from a final judgment based on fraud, misrepresentation, or other misconduct of an adverse party. The decision of whether to grant or deny such a motion is left to the equitable discretion of the trial court. *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002); *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind. 1994). We will not reverse a grant or denial of a motion for relief from judgment in the absence of an abuse of discretion. *Stonger*, 776 N.E.2d at 358;

---

[3] The parties also raise arguments of constitutional due process, relating to a putative father registering (or failing to register) with the Putative Father Registry, and interpretation of the adoption statutes. Finding the issue of fraud dispositive, we decline to address those arguments.

*see also Beike v. Beike*, 805 N.E.2d 1265, 1267 (Ind. Ct. App. 2004). The burden is on the movant to demonstrate that relief is both necessary and just. *Levin*, 645 N.E.2d at 604.

[14] When, as in this case, the trial court has made findings of fact and conclusions thereon, we apply a two-tiered standard of review: "we must first determine whether the evidence supports the findings and second, whether the findings support the judgment." *In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006); *see also* Ind. Trial Rule 52(A) (providing that where the trial court has made findings of fact and conclusions of law, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Factual findings "are clearly erroneous if the record lacks any evidence or reasonable inferences to support them [and] . . . [a] judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *T.W.*, 859 N.E.2d at 1217.

[15] To assert a claim of fraud on the court, the party must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense. *Stonger*, 776 N.E.2d at 357. The party also must show that he has a "meritorious claim or defense." *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65, 73 (Ind. 2006). This meritorious claim or defense requirement merely requires a prima-facie showing, that is, "'a showing that will prevail until contradicted and overcome by other

evidence.'" *Id.* This requires a showing that "'vacating the judgment will not be an empty exercise.'" *Id.*

[16] Fraud on the court has been narrowly applied and is limited to the most egregious of circumstances involving the courts. *Stonger*, 776 N.E.2d at 357. To prove fraud on the court, it is not enough to show a possibility that the trial court was misled. *Id.* at 358. Instead, there must be a showing that the trial court's decision was actually influenced. *Id.*

[17] Here, Putative Father alleges that Mother "misrepresented to [Putative Father] the facts regarding his relationship with [Child], and [Maternal Grandfather] and Mother misrepresented their knowledge about the existence of [Putative Father] as [Child's] biological father[, and that] [a]s a result of these misrepresentations, [Putative Father] failed to file with the putative father registry[,] and the trial court . . . granted [Maternal Grandfather's] adoption petition." (Putative Father's Br. 11). This allegation thus alleges an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented Putative Father from fairly presenting his case. *See Stonger*, 776 N.E.2d at 357. We agree.

[18] Putative Father grasped the opportunity to undertake his parental responsibilities toward Child by exercising regular visitation with Child, paying child support to Mother, and attending Child's doctor's appointments. At the same time, Mother was holding Putative Father out as Child's father, accepting child support payments, and permitting Putative Father to exercise visitation.

This continued even after Maternal Grandfather filed the adoption petition. Mother allowed Putative Father to keep Child over a weekend in June 2017, after the adoption petition was granted and before Putative Father was made aware of the adoption. Mother knew that Child called Putative Father "dad," and Mother, Putative Father, and Child had all lived together for a period of time. In addition, Putative Father was led to believe, and indeed believed, he was Child's father. Nevertheless, Maternal Grandfather fraudulently presented an adoption petition to the trial court claiming that Mother did not know the identity of Child's father.

[19] Based on the language of the trial court's written order granting (among other things) relief from judgment, it appears that the court was strongly of the view that its granting of the adoption petition was significantly influenced by Maternal Grandfather's claim that Mother did not know the identity of the Child's father. The trial court specifically found that "[b]ased on the Court's observation of [Mother] and the evidence presented [at the evidentiary hearing], the Court does not find her to be credible." (App. Vol. 2 at 10). We will not second-guess the trial court's finding.

[20] We are aware and acknowledge that INDIANA CODE § 31-19-5-18 governs the waiver of notice rights of unregistered putative fathers, providing that, "A putative father who fails to register within the period specified by section 12 of this chapter waives notice of an adoption proceeding. The putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption." I.C. § 31-19-5-18. INDIANA CODE § 31-19-5-12(a) sets forth

the time period in which a putative father must register, that is, for our purposes, within thirty days of the child's birth or by the date on which the petition to adopt the child is filed, whichever is later. We also acknowledge that statutes and established caselaw provide that "a putative father whose consent has been implied may not challenge the adoption or establish paternity." *See, e.g., In re Paternity of Baby Doe*, 734 N.E.2d 281, 285 (Ind. Ct. App. 2000); *In re Adoption of J.D.C.*, 751 N.E.2d 747, 750 (Ind. Ct. App. 2001); *In re Adoption of K.G.B.*, 18 N.E.3d 292, 297 (Ind. Ct. App. 2014); *In re Adoption and Paternity of K.A.W.*, 99 N.E.3d 724 (Ind. Ct. App. 2018); I.C. §§ 31-19-9-13, –14.

[21] Here, a verified petition for adoption was filed by Maternal Grandfather that stated that Mother did not disclose the name of Child's putative father. *See* I.C. § 31-19-5-1.[4] However, evidence was presented at the evidentiary hearing that both Maternal Grandfather and Mother knew that Putative Father was Child's father, and that Mother chose not to disclose this. Regardless of Putative Father's statutory waiver of notice of the adoption proceeding for failure to register with the Putative Father Registry, the fraud perpetrated by Mother and Maternal Grandfather precluded the trial court from having an opportunity to

---

[4] The statutory authority governing the Putative Father Registry

applies to a putative father whenever (1) an adoption under IC 31-19-2 has been or may be filed regarding a child who may have been conceived by the putative father; and (2) on or before the date the child's mother executes a consent to the child's adoption, the child's mother has not disclosed the name or address, or both, of the putative father to the attorney or agency that is arranging the child's adoption.

I.C. § 31-19-5-1(a).

consider Putative Father's relationship, as well as his family's relationship, with Child which compromises the best-interests aspect of the adoption decision-making process. *See* I.C. § 31-19-11-1(a)(1).[5] Under this set of facts, and in support of the trial court's belief that Mother lacked credibility at the evidentiary hearing, we conclude that Putative Father was entitled to equitable relief, notwithstanding Putative Father's failure to register with the Putative Father Registry.

[22] Based on the foregoing, we find that Mother and Maternal Grandfather engaged in an unconscionable plan or scheme to improperly influence the court's decision regarding the adoption, that such acts ultimately prevented Putative Father from fairly challenging the adoption of Child, and that Putative Father established a prima-facie showing of a meritorious defense. Therefore, we conclude that the trial court properly granted Putative Father's motion for relief from judgment and did not abuse its discretion in doing so.

[23] Affirmed.

Najam, J., and Crone, J., concur.

---

[5] INDIANA CODE § 31-19-11-1(a)(1) reads as follows: "(a) Whenever the court has heard the evidence and finds that: (1) the adoption requested is in the best interest of the child; . . . the court shall grant the petition for adoption and enter an adoption decree.