# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DENNIS F. CANTRELL**
Cantrell Strenski & Mehringer LLP
Indianapolis, Indiana

**DOUGLAS D. CHURCH**
Church Church Hittle & Antrim
Noblesville, Indiana

**KARL L. MULVANEY**
**NANA QUAY-SMITH**
**BRIANA L. CLARK**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

**SHEILA L. BIRNBAUM**
**DOUGLAS W. DUNHAM**
**ELLEN P. QUACKENBOS**
Quinn Emanuel Urquhart & Sullivan LLP
New York, New York

ATTORNEYS FOR APPELLEES:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana

**WILLIAM N. RILEY**
**JOSEPH N. WILLIAMS**
Price Waicukauski & Riley LLC
Indianapolis, Indiana

**J. MARK McKINZIE**
Riley Bennett & Egloff LLP
Indianapolis, Indiana



FILED
Sep 16 2014, 8:59 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, ) | |
| ) | |
| Appellant-Plaintiff/ ) | |
| Counterclaim/Defendant, ) | |
| ) | |
| vs. ) | No. 29A04-1311-CT-542 |
| ) | |
| JOSEPH MARTIN RADCLIFF and ) | |
| COASTAL PROPERTY MANAGEMENT, LLC, ) | |
| a/k/a CPM CONSTRUCTION OF INDIANA, ) | |
| ) | |
| Appellees-Defendants/ ) | |
| Counterclaimants. ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT

**September 16, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Plaintiff/Counterclaimant-Defendant, State Farm Fire & Casualty Company (State Farm), appeals the trial court's denial of its Trial Rule 60(B) Motion, which rejected its request for relief on the limited issue of defamation after a jury awarded 14.5 million dollars to Appellees-Defendants/Counterclaimants-Plaintiffs, Joseph Martin Radcliff (Radcliff) and Coastal Property Management LLC, a/k/a/ CPM Construction of Indiana (CPM).[1]

We affirm.

ISSUES

State Farm raises four issues which we restate as the following three issues:

(1) Characterizing its T.R. 60(B) Motion as *solely* a T.R. 60(B)(3) motion based on fraud on the court, State Farm asserts that the trial court abused its discretion by interpreting State Farm's T.R. 60(B) Motion as a T.R. 60(B)(2) motion based on newly discovered evidence and applying T.R. 60(B)(2)'s due diligence requirement to its T.R. 60(B)(3) Motion;

---

[1] We conducted oral argument in this cause on August 20, 2014 at the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel for their excellent presentation and advocacy.

(2) Whether the trial court abused its discretion by denying State Farm's T.R. 60(B) Motion as a matter of law; and

(3) Whether the trial court abused its discretion in denying State Farm to engage in further protracted discovery pursuant to T.R. 60(D) and in ruling on the T.R. 60(B) Motion without an evidentiary hearing when Radcliff elected to respond to State Farm's T.R. 60(B) Motion on legal grounds as opposed to factual grounds and therefore no further pertinent evidence would be needed to aid the trial court in its ruling.

## FACTS AND PROCEDURAL HISTORY

On June 29, 2011, a Hamilton County jury awarded Radcliff $14.5 million, the largest defamation verdict in Indiana history. Before us is the second appeal involving Radcliff's defamation counterclaim against State Farm arising from the Good Friday 2006 hailstorm.

On Good Friday, April 14, 2006, central Indiana suffered a large hailstorm that caused millions of dollars in property damage, generating almost 50,000 State Farm claims. Most of its policyholders' claims were denied by State Farm, even though other insurance companies were paying similar claims. Radcliff and his company, CPM, offered to help the State Farm policyholders. Amid a flurry of bad publicity about State Farm's claims response which, in part, was generated by Radcliff, State Farm launched an insurance-fraud investigation into Radcliff and CPM. Radcliff was arrested on fourteen felony counts, but the charges were eventually dismissed pursuant to a diversion agreement with the State. State Farm then sued Radcliff for fraud and racketeering;

3

Radcliff and CPM counterclaimed for, among other things, defamation. In the underlying defamation proceeding, Radcliff and CPM asserted that State Farm had defamed them by: (1) sending information to the National Insurance Crime Bureau (NICB)[2] which alleged that Radcliff and/or CPM had engaged in criminal conduct and (2) reviewing the accuracy of the probable cause affidavit which was the basis of the State's Information of fourteen felonies and one misdemeanor. *See State Farm Fire & Cas. Co. v. Radcliff*, 987 N.E.2d 121, 137 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied* (*State Farm I*).

Following a nearly six-week-long jury trial in which more than forty witnesses testified, a jury returned a $14.5 million verdict in favor of Radcliff and CPM on their defamation counterclaim. State Farm filed a motion to correct error in which it argued that (1) it was entitled to judgment on the evidence on the defamation claim, (2) it was entitled to a new trial under the "thirteenth juror" rule, and (3) the damage award was excessive. *See id*. at 136-37. The trial court denied the motion in its entirety. *See id*. at 137.

State Farm appealed. Documents filed in the appeal include twenty volumes of trial transcripts, more than fifteen volumes of exhibits, twelve volumes of appellant's appendix, ten claims notebooks, and other materials. During the appellate briefing stage, State Farm filed a Verified Motion for Limited Remand under Appellate Rule 37 in order

---

[2] The NICB is a not-for-profit organization that acts as a liaison between insurers and law enforcement. *State Farm I*, 987 N.E.2d at 132. It screens suspicious claims referred by insurers to determine whether they warrant submission to law enforcement. *Id*. At the time of *State Farm I*, State Farm was a member of the NICB and one of its largest financial contributors. *See id*.

4

to be allowed to file a Trial Rule 60(B) motion because it had "received a sworn statement leading it to believe that fraud was used to obtain the $14.5 million defamation judgment against State Farm and in favor of [CPM]." *Id*. On July 13, 2012, the motions panel, in a 2-1 decision, denied State Farm's Appellate Rule 37 motion. *See id*.

In its first appeal, State Farm brought three issues, alleging that: (1) it was entitled to judgment on Radcliff's defamation counterclaim pursuant to two defenses: the public interest privilege for crime reporting and statutory immunity; (2) Radcliff failed to prove actual malice by clear and convincing evidence; and (3) it was entitled to a new trial on damages. Finding that the evidence was sufficient to support Radcliff's and CPM's claim that, as limited-purpose public figures, they had proven by clear and convincing evidence that State Farm's statements were made with actual malice[3] and finding that State Farm had no applicable defenses, we affirmed the trial court. *See id*. at 148-51.

With respect to State Farm's Claim for Alternate Relief pursuant to its Verified Motion for Limited Remand, we held as follows:

> State Farm makes a request for alternative relief in its reply brief. Because State Farm makes this request for the first time in its reply brief, the issue is waived.

> Waiver notwithstanding, State Farm asks us to overrule the motions panel's decision and grant its Verified Motion of Limited Remand under Appellate Rule 37. State Farm argues that is motion presented compelling evidence of fraud on the court and this case should be remanded under *Logal v. Cruse*, 368 N.E.2d 235 (Ind. 1977). That is, State Farm claims that there is newly discovered evidence from a former CPM employee, Myisha

---

[3] In order to establish actual malice, Radcliff and CPM were required to prove by clear and convincing evidence that the speaker "'entertained serious doubts as to the truth of his publication' or acted with a 'high degree of awareness of [his statement's] probable falsity.'" *State Farm I*, 987 N.E.2d at 148.

5

> Richards, alleging again that Radcliff committed fraud—this time, they claim, on the court.
>
> The record shows however, that State Farm was scheduled to depose Richards in November 2009, but the deposition was canceled and never rescheduled. In addition, Richards contacted State Farm about the alleged fraud before State Farm filed its motion to correct error[], yet State Farm did not include this information in its motion to correct error[]. Based on these facts, we will not overrule the motions panel's ruling.

*Id.* at 155. After our supreme court denied transfer, the case was remanded to the trial court for further proceedings on State Farm's Trial Rule 60(B) Motion.

In its Verified Motion for Relief From Judgment Pursuant to Trial Rule 60(B), State Farm contended that it had located two ex-employees fired by Radcliff— Myisha Richards (Richards) and Charles Mulligan (Mulligan)—who suggested that the defamation judgment "may have been procured by fraud[.]" (Appellant's App. p. 1579). Because "the newly discovered evidence establishes fraud on the court," State Farm maintained that new "discovery, [a] hearing and [a] new trial are required." (Appellant's App. p. 1601).

On November 5, 2013, the trial court issued its Order, denying State Farm's Motion and ordering the jury award to be distributed. On November 13, 2013, State Farm filed an emergency motion to stay execution on judgment pending appeal with this court, which was unanimously denied the same day. Two days later, on November 15, 2013, State Farm sought emergency relief from our supreme court "to obtain an immediate stay of disbursement order." (Appellees' App. p. 94). On November 27, 2013, the supreme court unanimously denied the request. On December 2, 2013, the trial

6

court distributed the jury's award of $14.5 million, plus an additional amount in interest, to Radcliff.

State Farm now appeals the trial court's denial of its Motion for Relief based on T.R. 60(B). Additional facts will provided as necessary.

## DISCUSSION AND DECISION

State Farm presents this court with three overarching procedural issues arising from the trial court's denial of its T.R. 60(B) Motion. In essence, State Farm requests this court to grant relief from the defamation judgment in "light of the evidence that has been discovered that the judgment in this case may have been provided by fraud." (Appellant's App. p. 1579).

### I. *Standard of Review*

A grant of equitable relief under Indiana Trial Rule 60(B) is within the discretion of the trial court. *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002). In reviewing a T.R. 60(B) motion, "the trial court must weigh the alleged inequity that would result from allowing a judgment to stand against the interest of the prevailing party in its judgment, as well as those of society at large in the finality of litigation in general. *Dumont v. Davis*, 992 N.E.2d 795, 805 (Ind. Ct. App. 2013). Accordingly, we review a trial court's ruling on T.R. 60(B) motions for an abuse of discretion. *See id.* Thus, we will reverse the judgment only if it goes against the logic and effect of the facts or the trial court has misinterpreted the law. *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002).

### II. *T.R. 60(B)(2) vs. T.R. 60(B)(3)*

#### A. *Waiver*

Prior to turning to State Farm's procedural arguments, we must first address the waiver argument raised by Radcliff. In the first evaluation of State Farm's Motion, the court of appeals in *State Farm I* appeared to treat the T.R. 60(B) Motion as a motion brought under T.R. 60(B)(2), as it alluded to "newly discovered evidence." *State Farm I*, 987 N.E.2d at 155. Moreover, stronger support for the court's treatment of the motion pursuant to T.R. 60(B)(2) is found in the court's statement that State Farm could have included this new information in its motion to correct error. *See id*. Upon remand, the trial court apparently followed the path suggested in *State Farm I* and appeared to treat State Farm's Motion as a Motion pursuant to T.R.60(B)(2). Relying on the trial court's Order, Radcliff now contends that State Farm's argument is no longer available for our review because the factual findings made in *State Farm I* operate as a bar to State Farm's requested relief pursuant to the law of the case doctrine.

The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Luhnow v. Horn*, 760 N.E.2d 621, 625 (Ind. Ct. App. 2001). The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court. *Id*. Accordingly, under the law of the case doctrine, relitigation is barred for all issues decided "directly or by implication in a prior decision." *Id*.

Focusing on the "waiver notwithstanding" language of *State Farm I*, Radcliff asserts that because the appellate court already decided State Farm's motion for alternate relief, it is precluded from raising this issue again. However, the 'waiver

8

notwithstanding' part of our appellate decision is dicta, which is not binding and, therefore, cannot establish the law of the case. In *Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1083 (Ind. Ct. App. 2008), we noted that "statements that are not necessary in the determination of the issues presented are dicta, are not binding, and do not become the law of the case." We next turn to State Farm's substantive arguments.

### B. *T.R. 60(B)(3) Motion*

State Farm first contends that the trial court abused its discretion by characterizing its Motion for Relief from Judgment as a T.R. 60(B)(2) motion based on new evidence while its Motion clearly invoked the parameters of T.R. 60(B)(3), fraud on the court. Alleging that both subsections of the rule have substantially different standards, State Farm maintains that the trial court erred by applying the 'due diligence' requirement of subsection 2 to the fraud provision of subsection 3.

Indiana Trial Rule 60(B) provides that

On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:

\* \* \*

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct error under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

\* \* \*

9

The motion shall be filed . . . not more than one year after the judgment, order or proceeding was entered or taken . . . and must allege a meritorious claim or defense.

Thus, when a new trial is sought based on newly-discovered evidence pursuant to Indiana Trial Rule 60(B)(2), the appellant must show, among other things, that the evidence could not have been discovered before trial by the exercise of due diligence. *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002), *trans. denied*. A bare assertion that reasonable diligence has been used is insufficient to show due diligence; the appellant must set out facts showing due diligence has been exercised. *Id*. Moreover, a finding of due diligence does not rest upon abstract conclusions about, or assertions of, its exercise but upon a particularized showing that all the methods of discovery reasonably available to counsel were used and could not uncover the newly-found evidence. *Id*. It has been long recognized that a litigant is obliged "to search for evidence in the place where, from the nature of the controversy, it would be most likely to be found." *Id*.

On the other hand, T.R. 60(B) provides three distinct ways to attack a judgment based on fraud on the court. The first method—pursued by State Farm—is by way of a motion filed under T.R. 60(B)(3). Such a motion may be grounded in any kind of fraud—albeit intrinsic, extrinsic, or fraud on the court—so long as it is chargeable to an adverse party and has an adverse effect on the moving party. *Shepherd v. Truex*, 823 N.E.2d 320, 325 (Ind. Ct. App. 2005), *reh'g denied*. The second method is an independent action for fraud on the court pursuant to the savings clause of T.R. 60(B), which provides that this rule does not limit the power of a court to entertain an

10

independent action to relieve a party from a judgment, order or proceeding for fraud upon the court. *Id.* The third method, which also arises out of the savings clause, invokes the inherent power of a court to set aside its judgment if procured by fraud on the court. *Id.*

Regardless of which procedural avenue a party selects to assert a claim of fraud on the court, the party must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense. *Id.* Fraud on the court has been narrowly applied and is limited to the most egregious of circumstances involving the courts. *Id.* Further, to prove fraud on the court, it is not enough to show a *possibility* that the trial court was misled; rather, there must be a showing that the trial court's decision was *actually influenced.* *Id.* (emphasis added).

In addition to their individual requirements, both subsections of T.R. 60(B) also mandate the establishment of a meritorious claim or defense. This requires a showing that vacating the judgment will not be an empty exercise. *Outback Steakhouse of Fla., Inc. v. Markley*, 856 N.E.2d 65, 73 (Ind. 2006).

Here, the record is muddled as to which procedural avenue—T.R. 60(B)(2) or T.R. 60(B)(3)—State Farm selected for its Motion. While in its Verified Motion State, Farm refers to its petition as being brought pursuant to the general provision of T.R. 60(B); throughout its Motion, it frequently alludes to the narrower subsection of "new evidence" as well as presents us with numerous references to "fraud" allegations.
(Appellant's App. p. 1583).

C. *Due Diligence Requirement*

11

While we agree with State Farm that the fraud provision of T.R. 60(B)(3) does not include the explicit due diligence requirement of T.R. 60(B)(2), this is merely the beginning of our inquiry. First, it should be noted that the general preamble of the Rule calls for judicial relief "upon such terms as are just." *See* T.R. 60(B). Furthermore, when applying the 'ability to fully and fairly prepare the case' requirement of T.R. 60(B)(3) motions, federal courts[4] refuse to vacate a judgment based on allegations of fraud if the evidence (1) could have been obtained by the movant before the verdict had the movant used reasonable diligence; (2) is immaterial or merely conflicts with other evidence; (3) is inadmissible or merely impeaching; or (4) if the evidence is cumulative of other evidence. *See, e.g., Nansamba v. N. Shore Med. Ctr., Inc*., 727 F.3d 33, 41 (1st Cir. 2013) ("[T]he plaintiff has made no showing that any misconduct of the defendants' counsel inhibited her from fully and fairly preparing her case. It is transparently clear that, regardless of what defense counsel may or may not have done, the plaintiff has at her fingertips the records that would have laid bare what she now asserts to be the true facts. [] [H]er pursuit of the truth was not hampered by anything except her own reluctance to undertake an assiduous investigation.").

Albeit not explicitly, these federal requirements have been applied in Indiana case law before. In *Shepherd,* 823 N.E.2d at 327*,* we denied relief based on T.R. 60(B)(3) because "Shepherd had the opportunity, yet failed, to challenge the alleged perjurous affidavits by designating the witnesses' statements and the guilty plea—which were

---

[4] Because Indiana's Rule 60(B)(3) is worded identically to Federal Rule 60(b)(3), "Indiana courts routinely look to both Indiana and federal authority to interpret Indiana Rule 60(B)(3)." *Outback Steakhouse of Fla.*, 856 N.E.2d at 72.

known to him at the time of the original action."  Likewise, in *Cleveland v. Clarian Health Partners, Inc*., 976 N.E.2d 748 (Ind. Ct. App. 2012), the court specifically noted the movant's lack of expediency or diligence:  "Dr. Choi's deposition testimony was nearly seven years old, and Cleveland did not seek a second, updated deposition or propound interrogatories or requests for admissions.  Neither did she request to voir dire Dr. Choi outside the presence of the jury, otherwise attempt to explore the circumstances of the purported change in testimony, or move for a mistrial."  *Id*. at 759.  In *Glover v. Torrence*, 723 N.E.2d 924, 933 (Ind. Ct. App. 2000), we cited with approval "49 C.J.S. *Judgments* § 468 at 633-34" which stated that "ordinarily, relief on the ground of fraud cannot be predicated on matters or issues which actually were, or which with due diligence, could have been presented and adjudicated in the original proceedings."

Even though State Farm mentions *Freels v. Winston*, 579 N.E.2d 132 (Ind. Ct. App. 1991), in which this court specifically noted that "[t]he court's judgment can be sustained on the basis of misrepresentation which does not require a showing of due diligence," *Freels* also recognized the existence of contrary case law by referencing "*but cf. McFarland, Lantz v. Phend & Brown, Inc. et al*., 317 N.E.2d 460, 462-63 (Ind. Ct. App. 1974) (in affirming the trial court's denial of relief, [the c]ourt based its decision on finding that affiant's statements were not false, yet, in dicta [the c]ourt also noted that the evidence disclosing possible misrepresentation was not new and had been available from the beginning of the case)."

Whereas T.R. 60(B)(2) incorporates the due diligence requirement explicitly into its language, we find that the Rule's subsection (3) is not completely without an

13

obligation for the movant. The mandate incorporated into T.R. 60(B)(3) that the non-movant must have prevented the movant from "fully and fairly presenting its case or defense" implicitly requires a movant to act expeditiously and diligently during the proceedings. If no diligence must be used, then the finality of judgments is nonexistent as the movant might wait until the verdict to see if he or she should raise a fraud claim and, as such, this would effectively give litigants a second bite of the apple. Even though this diligence requirement is less strict than the explicit due diligence requirement of T.R. 60(B)(2), courts, within the exercise of their discretionary power, can take into account the totality of the circumstances, as proposed in its federal counterpart, and order relief "upon such terms as are just." *See* T.R. 60(B). With these parameters in mind, we now turn to State Farm's T.R. 60(B) Motion.[5]

### III. *Denial of State Farm's T.R. 60(B) Motion*

Turning to the main focus of this appeal, State Farm contends that because it presented sufficient evidence of fraud committed by Radcliff before and during the trial, the trial court erred when it denied its T.R. 60(B)(3) Motion. In support of its Motion, State Farm alludes to the sworn testimony by Richards and Mulligan, both former employees of Radcliff and/or CPM and both fired by Radcliff.

---

[5] State Farm contends in its appellate brief that the trial court characterized and interpreted its T.R. 60(B) Motion as a T.R. 60(B)(2) based on newly discovered evidence rather than as a T.R.60(B)(3) motion based on fraud on the court. Although the trial court's Order references T.R.60(B)(2), the Order also indicates the cumulativeness of what State Farm now alludes to as evidence supporting its fraud claim. Specifically, the trial court mentioned that State Farm was offered the opportunity to depose Richards, Mulligan's affidavit is barred by the motion in limine, and State Farm was in possession of Radcliff's Maryland conviction. Reading the trial court's Order in light of our interpretation of T.R. 60(B)(3), the trial court properly reviewed State Farm's T.R. 60(B) Motion.

14

In her affidavit, Richards affirmed that she noticed Radcliff intentionally shred documents after his Indiana arrest for insurance fraud in 2008 and that he paid Christine Sears, a former office manager, to "keep quiet." (Appellant's Br. p. 28). Mulligan asserted that he had observed Radcliff create simulated hail damage on a homeowner's downspout and heard him talk about damaging an insured's roof. In addition, State Farm argues that during his deposition Radcliff misrepresented his criminal record and omitted relevant information as to his October 2009 domestic violence arrest.

State Farm contends that due to Radcliff's fraudulent actions, State Farm was prevented from fully and fairly presenting its claims and defenses. Focusing on the defamation action, State Farm claims that by testifying at trial that he did not and would never engage in insurance fraud, Radcliff squarely placed his own truthfulness on the line. Thus, State Farm maintains that Radcliff was able to successfully convince the jury that State Farm's own communications were false by not disclosing this fraudulent conduct.

Radcliff's response focuses on the nature of the evidence, asserting that this perceived 'new' evidence referenced by State Farm is not all that new and was readily available to State Farm prior to trial. Therefore, as it was available—and in some instances already in State Farm's possession—State Farm was able to fully and fairly litigate the issues under T.R. 60(B)(3).

A. *Richards (Radcliff's Office Manager)*

Radcliff's main argument with respect to Richards relates to her availability to be deposed by State Farm. Radcliff points out that Richards claims to have learned of the

alleged fraudulent schemes in the spring and summer of 2009 in her capacity as Radcliff's office manager. State Farm was scheduled to take Richards' deposition on November 14, 2009—after Richards had acquired this alleged knowledge. However, on November 12, 2009, Radcliff's counsel informed State Farm that the scheduled deposition of Richards and Shannon Seale (Radcliff's wife) could not occur due to a "family emergency." (Appellant's App. p. 2439). Radcliff's counsel proposed and offered to reschedule both depositions for December 5, 2009. Although Seale's deposition was rescheduled, State Farm never followed up nor rescheduled Richards' deposition in the ensuing sixteen months leading up to trial. Regardless, Richards was listed as a fact witness and was a central figure throughout discovery.

Accordingly, not only was Richards known to State Farm, Radcliff practically begged State Farm to take her deposition, to no avail. Considering that Richards was in a managerial position during the period that the allegations took place, one would have expected State Farm to have obtained her deposition. State Farm's failure to depose Richards in a timely fashion prior to trial when it was aware of her existence and had been offered her presence at a deposition, is no one's fault but its own.[6] "Their effort to pass the buck is a technique as old as time, . . . , but its efficacy as a basis for relief has not improved with age." *Nansamba*, 727 F.3d at 41. Given State Farm's failure to offer a convincing explanation for the patent lack of common sense advocacy exhibited here, let alone to point to even the smallest remnant of an unconscionable ploy instigated by

---

[6] State Farm claims that even if they had deposed Richards in a timely manner, there is no guarantee that her deposition testimony would have divulged these fraudulent allegations as she only came forward after the verdict was handed down. However, this is a pure speculative claim which we refuse to entertain.

16

Radcliff to commit fraud on the court, the trial court properly denied State Farm's T.R. 60(B) with respect to Richards' affidavit. *See Shepherd*, 823 N.E.2d at 325.

## B. *Mulligan*

Mulligan is a fired ex-employee of CPM who did not work on any of the ten houses at issue in the underlying defamation action but who has now come forward and alleges that Radcliff intentionally damaged roofs of State Farm's insureds and told his employees to do the same. However, the trial court's Order in limine precluded State Farm from proffering evidence of vandalism on any homes other than the ten houses at issue. (Appellant's Tr. App. p. 2381).

"The catalyst needed to obtain the proper relief is some admissible evidence which may be in the form of an affidavit, testimony of witnesses, or other evidence obtained through discovery[.]" *Natare Corp. v. Cardinal Accounts, Inc.*, 874 N.E.2d 1055, 1059 (Ind. Ct. App. 2007) (citing *Bross v. Mobile Home Estates, Inc.*, 466 N.E.2d 467, 469 (Ind. Ct. App. 1984)). Accordingly, as the trial court had already excluded the substance of Mulligan's affidavit during the underlying trial by way of an Order in limine, State Farm cannot now bring in Mulligan's testimony through the back door.

## C. *Radcliff's Arrest & Domestic Violence Incident*

First, State Farm alludes that Radcliff falsely withheld his own guilty plea to having made a false statement on an application for the purchase of a firearm in Maryland. However, Radcliff points out that not only did State Farm produce this document in the course of discovery, it also presented this document for admission at trial and published it to the jury.

17

Second, with respect to the domestic violence incident between Radcliff and Seale, State Farm argues that, besides a brief mention during depositions, Radcliff and CPM never "revealed that Radcliff was arrested for aggravated bodily harm and assault on a law enforcement officer, or that physical violence was involved." (Appellant's Reply Br. p. 10). State Farm intends to use this evidence for impeachment purposes only, conceding that, had it been aware of this evidence, it "would have been entitled to explore the facts regarding Radcliff's violent physical abuse of his spouse, and those facts would have significantly altered the jury's view of Radcliff's defamation claim and the extent of any purported harm to his reputation." (Appellant's Br. p. 33).

On July 29, 2010, State Farm took Radcliff's deposition. During the deposition, Radcliff alerted State Farm to a domestic incident that had resulted in his arrest:

| | |
|---|---|
| State Farm: | Question is, have you been arrested since April 1, 2009? |
| Radcliff: | Yes. |
| State Farm: | When? |
| Radcliff: | Couple of months ago. |
| State Farm: | Where? |
| Radcliff: | Florida. |
| State Farm: | For [w]hat? |
| Radcliff: | Family stuff. |
| State Farm: | Where you charged with a crime? |
| Radcliff: | All charges dismissed. |
| State Farm: | Where you charged with a crime? |
| Radcliff: | Yes. |
| State Farm: | What were the charges? |
| Radcliff: | Domestic. |
| State Farm: | Domestic what? |
| Radcliff: | It was domestic. I don't know the exact charges of it. It was domestic and everything was dismissed. |
| State Farm: | Who brought the charges? |
| Radcliff: | The State, even though they were told not to do charges because there was not crime committed, and |

18

> we just had to get lawyers to prove that case with witnesses, and they dismissed the case.
>
> State Farm: By domestic do you mean your family?
>
> Radcliff: Yes.

(Radcliff Depo. pp. 298-99). State Farm did not further pursue this information until after the defamation verdict was handed down. Radcliff counters, asserting that because State Farm itself elicited testimony about the incident from both Radcliff and Seale before the trial ever started, State Farm had undisputed knowledge of the information and it was State Farm who thereafter chose not to explore the facts in greater depth. We agree.

The deposition testimony clearly indicates a "domestic"-type crime, serious enough for the State to pursue charges and for Radcliff to consult an attorney. (*See* Radcliff Depo. pp. 298-99). Therefore, State Farm had in its possession all the facts it needed to pursue this information with the authorities in Florida or to demand production of the relevant documents by Radcliff. Contrary to its assertion, State Farm was not hampered by Radcliff's veracity, but rather by its own reluctance to conduct an assiduous investigation into the knowledge it gained. As such, State Farm was not prevented by Radcliff from fully and fairly presenting its defense. *See* T.R. 60(B)(3).

In addition, Radcliff maintains that evidence of this arrest (there was never a conviction) would have been inadmissible at trial. We agree. On May 23, 2011, prior to trial, the trial court entered an Order in limine specifically prohibiting all "evidence of any alleged criminal action that was charged but did not result in a conviction . . . except where the evidence is of relevant acts or criminal charges that were in the furtherance of

19

and not separate and distinct from the pattern of racketeering that is set forth in the Amended Complaint." (Appellant's Tr. App. p. 2382). State Farm never challenged this ruling at trial or on appeal. Consequently, as this evidence would have been precluded at trial, it cannot now be admitted through a T.R. 60(B) Motion. *See Natare Corp.,* 874 N.E.2d at 1059.

Simply put, the record does not reveal fraud or any unfair impediment to State Farm's ability to fully and fairly defend against Radcliff's claim of defamation. After all, State Farm had at its beck and call the complete panoply of pretrial discovery devices, including deposition notices and demands for document production. It was offered access to depose Richards, if it had chosen to take advantage of that opportunity. State Farm availed itself of none of these measures. Had it done so, common sense suggests that it easily could have discovered this 'new' evidence prior to the entry of the verdict. Based on the record before us, State Farm's quest in uncovering this evidence was hampered by its own reluctance to undertake a detailed investigation. Because we will not grant State Farm relief from its own omissions, we affirm the trial court and conclude that it properly denied State Farm's T.R. 60(B) Motion.

### III. *Ind. T.R. 60(D)*

As a final argument, State Farm contends that the trial court abused its discretion by failing to conduct a hearing on its T.R. 60(B) Motion and denying its request for further discovery pursuant to T.R. 60(D).

Indiana Trial Rule 60(D) provides:

> In passing upon a motion allowed by subdivision (B) of this rule, the court shall hear any pertinent evidence, allow new parties to be served with summons, allow discovery, grant relief as provided under Rule 59 or otherwise as permitted by subdivision (B) of this rule.

Thus, where there is no "pertinent evidence," a hearing is unnecessary. *Benjamin v. Benjamin*, 798 N.E.2d 881, 889 (Ind. Ct. App. 2003). In *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc*., 459 N.E.2d 420, 425 (Ind. Ct. App. 1984), we noted that while the language of the rule may be read as requiring the trial court to allow discovery for purposes of a motion for relief from judgment, it remains that discovery is an issue within the sound discretion of the trial court. Limitations are necessarily placed upon discovery to prevent it from becoming a tool of oppression and harassment. *Id*. Therefore, we will only reverse a trial court's grant or denial of a discovery request for an abuse of discretion. *Id*.

Focusing on Richards' detailed affidavit, State Farm claims that there was ample pertinent evidence requiring a hearing and further discovery. In particular, the discovery requested by State Farm would include depositions of Richards, Mulligan, and others which could show the extent of the insurance fraud, litigation fraud, and misconduct that allegedly occurred in this case, as well as expert analysis of computers, cell phones, and other records in the possession of Richards, Mulligan, and Radcliff.

In formulating its response to State Farm's T.R. 60(B) motion, Radcliff treated State Farm's factual allegations as true and responded to the Motion on legal grounds based on State Farm's moving papers, therefore essentially eliminating the need for— what State Farm terms—the collection of 'new' evidence. Furthermore, Judge Nation

had a long familiarity and first-hand knowledge of this case and its proceedings: Judge Nation "saw every piece of evidence come in, heard and ruled on every objection, observed the objections that were not made, and followed every theme presented to the jury" and, as such, he did not mandate a separate evidentiary hearing prior to his ruling. (Appellees' Br. p. 40). Therefore, we conclude that the trial court did not abuse its discretion by denying State Farm's request for a hearing and further discovery.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied State Farm's T.R. 60(B) Motion and affirm the trial court's denial of State Farm's request based on T.R. 60(D)

Affirmed.

ROBB, J. and BRADFORD, J. concur